**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RONALD FRANK ROMERO,

      Defendant-Appellant.

No. 97-2065

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR. 96-127 BB)**

Darryl S. Cordle, Albuquerque, New Mexico, for Defendant-Appellant Ronald Frank Romero.

Kathleen Bliss, Assistant United States Attorney, Albuquerque, New Mexico, (John J. Kelly, United States Attorney, with her on the briefs) for Plaintiff-Appellee United States of America.

Before **BALDOCK, LOGAN** and **EBEL**, Circuit Judges.

**EBEL**, Circuit Judge.

     Ronald Frank Romero ("Romero"), an Indian, was arrested and indicted for aggravated assault on an Indian reservation against two non-Indians. The federal

government asserted criminal jurisdiction under 18 U.S.C. § 1152.[1]  After

receiving instructions from the court that the Government must prove the non-

Indian status of the alleged victims, the jury returned a verdict of guilty.   Romero

now appeals the district court's refusal to grant his post-trial motion for judgment

of acquittal, on the grounds that the government failed to offer any evidence that

Romero's alleged victims are not Indians.  Romero argues that the non-Indian

status of the victim of an Indian defendant charged under 18 U.S.C. § 1152 is an

element of the crime.  The Government responds by asserting that the non-Indian

status of the victim in § 1152 cases is an exception to the statute which must be

raised and established by the defendant.  Because the unopposed jury instructions

making the non-Indian status of the victims an element of the Government's case

formed the law of this case, and because there was no evidence presented on the

---

[1] 18 U.S.C. § 1152 (1984) reads, in full:

Except as otherwise expressly provided by law,
the general laws of the United States as to the punishment
of offenses committed in any place within the sole and
exclusive jurisdiction of the United States, except the District
of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by
one Indian against the person or property of another Indian, nor
to any Indian committing any offense in the Indian country who
has been punished by the local law of the tribe, or to any case
where, by treaty stipulations, the exclusive jurisdiction over
such offenses is or may be secured to the Indian tribes respectively.

Indian or non-Indian status of the alleged victims, we reverse Romero's convictions.

**I.**

All of the underlying events in this case occurred on the Nambe Pueblo Indian Reservation in New Mexico. On May 14, 1994, Romero approached the home of his neighbor, Lloyd Sanders ("Sanders"), to ask Sanders whether he had been involved with or knew anything about some missing fence posts belonging to Romero's father. At the time, Sanders and some acquaintances, Chris Herrera ("Herrera") and Michael Padilla ("Padilla"), were working on a vehicle in front of Sanders' home. During the course of their conversation, Romero accused Sanders of stealing his father's fence posts. Sanders denied stealing the posts. A shouting match ensued, culminating in Romero retrieving a bolt action rifle, re-entering Sanders' property, pointing the rifle at Sanders, Herrera and Padilla, and screaming "I'll kill you, I'll kill you bastards." The three men remained pinned behind the car for several minutes until Romero left.

Romero was subsequently arrested and indicted in federal court with two counts of aggravated assault with a deadly weapon under 18 U.S.C. § 1152, 18

U.S.C. § 13, and N.M. Stat. Ann. § 30-3-2.[2]  The indictment identified Sanders

and Padilla as the victims.  The indictment also expressly alleged that Romero

was an Indian, that his victims were non-Indians, and that the crime occurred in

Indian Country.

Sanders and Padilla testified at Romero's jury trial but were never asked

about their Indian or non-Indian status.  At the conclusion of trial, the jury was

instructed as follows:

---

[2] 18 U.S.C. § 1152, also known as the Indian Country Crimes Act, establishes federal jurisdiction over criminal acts against the general laws of the United States committed in Indian Country, subsequent to the three listed exceptions.  These exceptions recognize and preserve tribal sovereignty over matters of central importance to tribal self-government.  See United States v. Wheeler, 435 U.S. 313, 322-26 (1978);  Robert N. Clinton, Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze, 18 Ariz. L. Rev. 503, 522 (1976); Felix S. Cohen, Handbook of Federal Indian Law 290 (1982 ed.) (noting that by excepting many offenses from the Indian Country Crimes Act Congress "manifested a broad respect for tribal sovereignty, particularly in matters affecting only Indians.").

18 U.S.C. § 13 (West Supp. 1997), known as the Assimilative Crimes Act, inter alia, makes punishable under federal law any act done in Indian Country that would be punishable if done within the jurisdiction of the state where such land is situated according to the terms of that state's criminal laws.  See Williams v. United States, 327 U.S. 711, 713-14 (1946); Kirke Kickingbird et al., Indian Jurisdiction 18 (1983).

Aggravated assault is defined by N.M. Stat. Ann. § 30-3-2 as "unlawfully assaulting or striking at another with a deadly weapon."  In turn, assault is defined in the New Mexico statutes as "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery . . . ."  N.M. Stat. Ann. § 30-3-1.

- 4 -

For you to find the defendant guilty of aggravated assault by use of a deadly weapon, as charged in COUNT I of the Indictment, the government must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.  The Defendant threatened Lloyd Sanders with a rifle;
2.  This caused Lloyd Sanders to believe he was about to be shot with the rifle;
3.  A reasonable person in the same circumstances as Lloyd Sanders would have had the same belief;
4.  The defendant used a rifle, as a deadly weapon;
5.  Lloyd Sanders is not an Indian;
6.  The defendant is an Indian;
7.  The incident occurred in Indian Country;
8.  The incident occurred within the State and District of New Mexico on or about May 14, 1994.

You are instructed that the United States and the Defendant have stipulated to the sixth element of this offense, and have stipulated that the place in which this offense is alleged to have occurred is within Indian country. You may accept the sixth element as being proved, and if you find that the incident occurred, you may accept the seventh element as being proved.

An identical instruction was given for Count II, which charged aggravated assault with a deadly weapon against Michael Padilla. It is clear from the record that the Government thought that the instructions included a stipulation that the alleged victims were non-Indians. The exchange between the court and the parties on this point went as follows:

THE COURT: Let's talk about the jury instructions then while the jury is still out. Are there any objections to the instructions ?

- 5 -

[THE GOVERNMENT]: No, Your Honor. I did submit, based upon the stipulation, an additional instruction that clarifies that the Government need not prove that the victims were non-Indians, and that it occurred in Indian Country. And so I feel assured that your clerk has incorporated that into the instructions.

THE COURT: Yes, she assured me she had. And I'm going to check right now and make sure and see what she's added about that. Yes, at the end of the instruction that deals with the elements, she's added, "You are instructed that the United States and the Defendant have stipulated to the sixth element of this offense, and have stipulated that the place in which this offense is alleged to have occurred is within Indian country. You may accept the sixth element as being proved, and if you find that the incident occurred, you may accept the seventh element as being proved." Is that acceptable ?

[THE GOVERNMENT]: Yes, Your Honor.

[DEFENSE COUNSEL]: It is, Your Honor. I reviewed the jury instructions over lunch, and I have no objection to them.

Notwithstanding the Government's belief to the contrary, it is apparent that Romero never stipulated to the non-Indian status of Sanders and Padilla, because the "sixth element" listed in the jury instructions dealt with the defendant *Romero's* status as an Indian, and not the *victims'* status as non-Indians, while the "seventh element" only dealt with the location of the offense being in "Indian Country." There was no stipulation in the record pertaining to the "fifth element," which is the one addressing the non-Indian status of the victims. Both the Government and the defense stated on the record that they had no objections to the instructions as they were read to them by the court. Neither side raised the

issue of the non-Indian status of the victims during trial and neither side presented evidence on that issue.

During deliberations the jury asked if it was required to determine whether the victims were non-Indians.  See United States v. Romero, No. CR 96-127 BB, at 2 (D.N.M. Nov. 12, 1996) (unpublished order).[3]  After conferring with counsel for both sides, the court simply informed the jury that it was the jury's job to decide "every element of the crimes charged."   Both the Government and the defense agreed to this response.  The jury returned a verdict of guilty on both counts.  See id. at 30.

Romero filed a motion for a judgment of acquittal under Fed. R. Crim. P. 29(c).  Romero argued that the Government had failed to meet its burden of proving that the victims were non-Indians, thus he could not be convicted under 18 U.S.C. § 1152.   The district court determined that notwithstanding the instruction, the non-Indian status was a matter of defense to be proved by the defendant.  Accordingly, the district court denied the motion.  See United States v. Romero, No. CR 96-127 BB, at 11.   Romero was sentenced to 18 months imprisonment followed by one year of supervised release.

---

[3] The note from the jury read as follows: "We have some jurors who say that Lloyd Sanders and Michael Padilla have not been proven to be non-Indian, despite the statement in the instructions.  Do we, as jurors, have to decide this ?" (Tr. Rec. Vol. 1 at 27.)

The parties in this case raise some very difficult federal Indian law questions, namely whether under 18 U.S.C. § 1152 the non-Indian status of the victim of an Indian defendant is an element of the crime or an exception to the statute, and if the victim's non-Indian status is a statutory exception, then which party has the burden of raising and proving the Indian or non-Indian status of such victims.[4]  However, we do not reach those issues because in this case the Government agreed to the jury instruction that the non-Indian status of the alleged victims is an element that must be proved by the Government in order to convict Romero of the offense, and this circuit's law of the case doctrine now prevents us from reaching these intriguing questions.  Instead, we are compelled to find that Romero's conviction must be overturned because of the Government's failure to prove an element of the crime as charged to the jury.

## II.

This circuit's adherence to our law of the case doctrine was recently acknowledged by the Supreme Court in United States v. Wells, 117 S. Ct. 921 (1997).  In that case, the defendants had been charged with knowingly making a

---

[4] Compare United States v. Torres, 733 F.2d 449, 456-57, 458 n.10 (7th Cir. 1984) (holding that the non-Indian status of the victim is an element of the offense to be proven by the Government), with United States v. Hester, 719 F.2d 1041, 1042 (9th Cir. 1983) (holding that the non-Indian status of the victim is not an element that has to be alleged and proven by the Government).

false statement to a federally insured bank in violation of 18 U.S.C. § 1014. See id. at 924. At trial, the Government had agreed to a jury instruction listing materiality of the false statement as an element of the crime, but an element to be decided by the court, not the jury. See id. The court determined that the false statements were material and the jury convicted the defendants. The Court of Appeals for the Eighth Circuit reversed the convictions and remanded for a new trial on the ground that materiality was an element of the crime to be decided by the jury. The Supreme Court granted the Government's petition for certiorari to decide if materiality of the false statement is indeed an element of the crime under 18 U.S.C. § 1014. See id. at 925.

The defendants argued that because the Government had agreed at trial to a jury instruction listing materiality of the false statement as an element of the crime the Eighth Circuit's law of the case doctrine precluded the Government from arguing to the contrary on appeal. See id. In its holding the Court noted that "several Courts of Appeals have ruled that when the Government accepts jury instructions treating a fact as an element of an offense, the 'law of the case' doctrine precludes the Government from denying on appeal that the crime includes [that] element." Id. (citing United States v. Killip, 819 F.2d 1542, 1547-48 (10th Cir. 1987); United States v. Tapio, 634 F.2d 1092, 1094 (8th Cir. 1980); United States v. Spletzer, 535 F.2d 950, 954 (5th Cir. 1976)). Despite its

acknowledgment that the law of the case doctrine may be adopted by the circuit courts for purposes of "controlling the party who wishes to change its position on the way from the district court to the court of appeals," the Supreme Court nonetheless refused to be bound by a circuit's choice to follow this doctrine.[5]  Id. at 925-26.  In this way the Court implicitly held that adherence to the law of the case doctrine at the circuit level is a matter left to the discretion of the circuit courts.  See id. at 925 n.4 (noting that the "law of the case" doctrine in contexts such as these implicates "an appellate court's relationship to the court of trial") (citing 18 Charles Alan Wright et al., Federal Practice and Procedure § 4478 (1981)).

As the Supreme Court pointed out in Wells, the rule in this circuit is that agreed-upon jury instructions form "the law of the case, and the evidence must

---

[5] In doing so the Court held that a circuit's adoption of a rule such as the law of the case doctrine:

> [C]annot dispositively oust this Court's traditional rule that we may address a question properly presented in a petition for certiorari if it was "pressed [in] or passed on" by the Court of Appeals, United States v. Williams, 504 U.S. 36, 42, 112 S.Ct. 1735, 1739, 118 L.Ed.2d 352 (1992) (internal quotation marks and emphasis omitted).  Accordingly, we have treated an inconsistency between a party's request for a jury instruction and its position before this Court as just one of several considerations bearing on whether to decide a question on which we granted certiorari.  See Springfield v. Kibbe, 480 U.S. 257, 259-260, 107 S.Ct. 1114, 1115-16, 94 L.Ed.2d 293 (1987).  Here, it seems sensible to reach the question presented.

Wells, 117 S. Ct. at 925-26.

conform to them to support the conviction." United States v. Cronic, 900 F.2d 1511, 1515 n.3 (10th Cir. 1990) (citing Killip, 819 F.2d at 1548).  This rule has been in effect in this circuit since at least 1972, the year this court decided United States v. Woodring, 464 F.2d 1248 (10th Cir. 1972).  In that case, defendant Woodring was charged with escape from a federal penitentiary in violation of 18 U.S.C. § 751(a).  See id. at 1250.  At trial, the district court instructed the jury that specific intent to escape was an element of the crime.  See id. at 1251.  Woodring was convicted; on appeal he challenged his conviction on the basis that the Government failed to prove specific intent.  See id.

This court held that although "specific intent is not an element of § 751(a), specific intent became the law of the case when the Court gave [its instruction]." Id.  We then upheld the conviction on the ground that at trial the Government had presented sufficient evidence of Woodring's specific intent to escape.  See id.[6]

We again encountered the law of the case doctrine in Killip, 819 F.2d at 1548.  In that case, the defendants were charged with a number of offenses, including conspiracy to violate the RICO Act.  See id. at 1544.  At trial, the

_____

[6] We note that our decision in Woodring served as a strong basis for the rationale underlying the Fifth Circuit's application of the law of the case doctrine in Spletzer.  See Spletzer, 535 F.2d at 954.  Spletzer also relied on another Tenth Circuit opinion, United States v. Johnson, 495 F.2d 242 (10th Cir. 1974).  In Johnson, the court declined to review the adequacy of an entrapment instruction because no objections were made to these instructions and they therefore became the law of the case.  See id. at 244.

Government agreed to jury instructions requiring that, in order to convict on the RICO conspiracy charge, the jury must find that the defendants had agreed personally to commit two predicate acts. See id. at 1548. The defendants were convicted only of the RICO conspiracy charge. See id. at 1547. On appeal, the defendants challenged their convictions on the grounds that the Government had failed to prove that they each had agreed *personally* to commit two predicate acts. See id. The Government responded that under RICO case law it had only to prove that the defendants had agreed to the commission of two predicate acts by *a co-conspirator*. See id. at 1547-48.

We rejected the Government's argument, holding that the unchallenged instructions, and not the case law, formed the law of the case. See id. at 1548. Because the Government had presented sufficient evidence of agreement to commit two predicate acts only on the part of one of the defendants, Krout, we reversed the conviction of co-defendant Teague. See id. at 1548-49.[7]

In Michaud v. United States, 350 F.2d 131, 132 (10th Cir. 1965), the defendant was convicted of threatening the life of the President of the United States, in violation of 18 U.S.C. § 871. At trial, the court instructed the jury that in order to find that the defendant had "knowingly and willfully" made a threat

---

[7]   See also 18 Charles Alan Wright, et al., Federal Practice and Procedure § 4478 (1981) ("[F]ailure to object to a jury instruction makes the instruction the law of the case for purposes of measuring the sufficiency of the evidence.").

against the President it had to find that the defendant had intended to carry out that threat himself.  See id. at 133.  We held that this interpretation of "knowingly and willfully" was an erroneous statement of the law, and that whereas a defendant "[u]sually . . . cannot claim prejudice from an incorrect instruction that is favorable to him," in this case the erroneous definition inserted "a false issue of magnitude sufficient to nullify proper consideration of the issues," thus thwarting the "proper administration of justice."  Id. at 133-34.  For this reason we reversed the conviction and remanded for a new trial.

Michaud is distinguishable from Woodring and Killip, as well as from the case before us, for the following reasons:  (1) the law of the case doctrine was not at issue in Michaud, rather the issue was whether the jury instructions impermissibly confused the jury as to the issue before it;  (2) the "false issue" in question related to the proper definition of the language of an element, not to a separate and distinct element that the Government bound itself to prove by agreeing to the jury instructions; and (3) the sufficiency of the evidence to support the conviction was not raised by the defendant.[8]

---

[8] United States v. Van Buren, 513 F.2d 1327 (10th Cir. 1975), can be distinguished on similar grounds.  There we affirmed a conviction where an erroneous instruction was given.  However, we concluded that the false instruction there did not lead to jury confusion.  The issue of law of the case was not addressed nor is it clear that sufficiency of the evidence under the erroneous element was one of the issues raised on appeal.

In sum, the case law in this circuit clearly establishes that we adhere to the law of the case doctrine, whereby the Government is required to prove all elements put forth in unchallenged instructions to the jury, even if the Government would not, under law, be otherwise required to do so. See Cronic, 900 F.2d at 1515 n.3; Killip, 819 F.2d at 1547-48. We note that adherence to this doctrine does not come without some cost. For one thing, as the Supreme Court observed in Wells, the law of the case rule binds the court's hands and restricts the court of appeals from fulfilling its usual role of reviewing lower courts' decisions for errors of law. See Wells, 117 S. Ct. at 925-26. On the other hand, the Government chooses its charge and once it announces to the jury what it will have to prove, we can see the propriety of holding the Government to its charge, even though it undertook to prove an element not required by the law. In any event, because one panel may not overrule an earlier panel's decision, this circuit's adherence to the doctrine of the law of the case can only be ended by a decision by the court en banc, or by the Supreme Court. Until that time, the law of the case doctrine remains in force in this circuit.

### III.

As discussed above, the Government admits that it presented no evidence of the non-Indian status of Sanders and Padilla at trial. We decline to accept the

Government's suggestion that the jury could have determined that Sanders and Padilla, both of whom testified before the jury, were non-Indians on the basis of their names, appearance, speech, and testimony that they did not grow up on the Nambe Pueblo.  Not only did the jury's question to the court indicate that the jury felt it had been presented with insufficient information upon which to determine the non-Indian status of Sanders and Padilla, the Government's  suggested basis for such a determination does not obviously satisfy the complex legal definition of Indian status.  See United States v. Rogers, 45 U.S. (4 How.) 567, 572-73 (1846); United States v. Lawrence, 51 F.3d 150, 152 (8th Cir. 1995); Cohen, supra, at 19;  cf. Scrivner v. Tansy, 68 F.3d 1234, 1241 (10th Cir. 1995) (applying 18 U.S.C. § 1153).

Because the Government agreed to the court's instructions that the non-Indian status of Sanders and Padilla was an element necessary for conviction, and because the Government did not offer any proof as to the non-Indian status of those individuals, we have no choice but to reverse Romero's convictions.  See United States v. Perez, 959 F.2d 164, 168 (10th Cir. 1992) (a finding of insufficiency of the evidence bars retrial under double jeopardy principles).

**IV.**

For the reasons stated above, the convictions of Ronald Frank Romero under 18 U.S.C. § 1152 are REVERSED.