**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.              No. 04-4317

THOMAS RAY GURULE,

  Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:04-CR-209-PGC)**

---

Wayne T. Dance, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the brief), Salt Lake City, Utah, for the Appellee.

Benjamin A. Hamilton, Salt Lake City, Utah, for the Appellant.

---

Before **EBEL**, **HOLLOWAY** and **KELLY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

  Thomas Ray Gurule was indicted and found guilty after a jury trial for violation of the federal carjacking statute, 18 U.S.C. § 2119. Because the trial court found that Gurule had two prior "serious violent felony" convictions, the court sentenced him to life

imprisonment pursuant to 18 U.S.C. § 3559(c) (specifying mandatory life imprisonment if defendant is convicted of a "serious violent felony" and has two or more prior "serious violent felony" convictions). Gurule appeals, contending that (1) there was insufficient evidence to support his conviction for the offense; and (2) the imposition of a life sentence in this case violates various provisions of the United States Constitution.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because we find no error, we affirm.

## I. BACKGROUND

### A

On August 9, 2003, Mr. Gurule and a companion committed a theft at a gas station by taking gas without paying for it. They fled the scene in their car. A gas station attendant jumped in her vehicle and pursued the fleeing thieves. During the high-speed chase, Gurule lost control of his car and crashed into a parked vehicle. Gurule fled on foot while his accomplice drove away in the car. (ROA, Vol. II at 103-04.)

During the ensuing chase, the gas station attendant crashed into a mailbox belonging to the Grussendorf family. The attendant went to the door of the residence to report the damage to the mailbox. The door was opened by 18-year-old Erin Grussendorf. Ms. Grussendorf accompanied the gas station attendant outside to inspect the damage to the mailbox. As the attendant was explaining the circumstances surrounding the crash to

Ms. Grussendorf, the police arrived. (*Id.* at 37, 104.)[1] The gas station attendant excused herself, and Ms. Grussendorf went back inside the house.

About thirty minutes later, Gurule, who had been hiding in the neighborhood, secretly entered the Grussendorf home. Ms. Grussendorf, who was working on her computer, noticed Gurule as he entered the room. She immediately began to cry. Gurule told her that he would not hurt her, that he had done something bad, and that he needed a ride out of the area. (*Id.* at 38.) Gurule then grabbed Ms. Grussendorf by the arm and led her to her bedroom to get her car keys. Gurule asked Ms. Grussendorf if she had any money; she replied that she did not. Still holding Ms. Grussendorf's arm, Gurule led her to her parents' bedroom, where he located some jewelry. (*Id.* at 39-40.) Gurule put the jewelry in a pillowcase and led Ms. Grussendorf downstairs to the kitchen where he obtained an 8-10 inch, serrated knife with two hooks at the end. (*Id.* at 40-42.)

Holding the knife to Ms. Grussendorf's back, Gurule led her through the garage and outside to her vehicle. Gurule pushed her from the passenger seat into the driver's seat and then got into the front passenger side and crouched on the floor. (*Id.* at 42-44.) Holding the knife to Ms. Grussendorf's abdomen, Gurule told her that he had a gun. (*Id.* at 45.) He then ordered her to drive to the freeway. While en route to the freeway, Gurule observed a policeman and told Ms. Grussendorf not to do anything "stupid."

[1] At trial, Gurule stipulated to the facts surrounding the gas station theft and subsequent chase. Gurule also stipulated to the fourth element of carjacking, *i.e.*, that the victim's car was previously transported, shipped or received in interstate or foreign commerce. (ROA, Vol. II at 103-04.)

Throughout the ordeal Gurule kept the knife pointed at Ms. Grussendorf's abdomen and exhibited erratic behavior. At times, Gurule appeared calm and asked Ms. Grussendorf questions, such as her name, her parents' name, and where she attended school. At other times, Gurule yelled at her because she was taking too long to get to the freeway. (*Id*. at 46-47.) At one point, Gurule sat up in the passenger seat and instructed Ms. Grussendorf to get off the freeway, make several turns, and then pull over. Ms. Grussendorf complied with Gurule's demands, including exchanging places with Gurule and getting onto the floor of the car. (*Id*. at 48-52.)

After awhile, Gurule lost sight of the knife and began shouting at Ms. Grussendorf. Hoping to calm Gurule down, she told him that the knife was under his leg. (*Id*. at 56-57.) Gurule then placed the knife on his leg and told Ms. Grussendorf "he hoped [she] would be alive to tell [her] grandchildren about this" and that it was a "good thing that [her] mom wasn't home" because "if there were two hysterical women he would have had to kill us both." (*Id*. at 58.)

When Gurule asked for directions to a particular address, Ms. Grussendorf became more fearful because she thought there might be others at the stated location and that she would be hurt or killed. (*Id*. at 59-60.) Later, though, Gurule stopped the car and reached over and shook her hand, telling her not to go anywhere until she counted to fifty. (*Id*. at 60-61.) As soon as Gurule left, Ms. Grussendorf drove to a nearby fast-food restaurant and requested help from an employee.

**B**

Gurule was indicted for carjacking in violation of 18 U.S.C. § 2119. The government filed a notice of sentencing enhancement pursuant to 18 U.S.C. § 3559(c)(4) (also known as the "the Three Strikes" law) and 21 U.S.C. § 851(a) as a result of Gurule's two previous convictions for "serious violent felonies." (ROA, Vol. I, Doc. 12). The case proceeded to trial. At the close of the evidence and again after closing argument, Gurule moved for a judgment of acquittal. The district court denied the motions. Gurule was convicted of the carjacking offense.

Prior to sentencing a presentence report was prepared. The probation officer informed Gurule that although the ordinarily applicable statutory maximum for carjacking was 15 years with a Sentencing Guideline range of 168 to 210 months (based on an offense level of 30 and criminal history category VI), pursuant to 18 U.S.C. § 3559(c) and U.S.S.G. § 5G1.1(b), there was a mandatory term of imprisonment for life. (ROA, Vol VI, at 18, ¶ 77 & ¶ 78.) Gurule objected to the presentence report on the ground that the "Three Strikes" statute was unconstitutional, *inter alia*.

At the first sentencing hearing, the court "arraigned" Gurule on his two prior felony convictions for robbery that were to be used to enhance his sentence under section 3559(c).[2] The court also continued sentencing to allow the parties to brief the

---

[2]*See* 18 U.S.C. § 3559(c)(4), which incorporates by reference the sentencing procedures set out in 21 U.S.C. § 851(a).

constitutionality of section 3559(c).[3]  Prior to the final sentencing hearing, Gurule filed a sentencing memorandum objecting to the sentencing enhancement under the Three Strikes statute and claiming that his 1969 conviction for robbery did not qualify as a serious violent felony.  At the final sentencing hearing, the court concluded that section 3559(c) mandated a term of life imprisonment.  The court rejected Gurule's contention that the 1969 conviction for robbery did not qualify as a serious violent felony and also rejected each of Gurule's constitutional challenges to section 3559(c).  The court imposed a sentence of life imprisonment.

Gurule appeals on two principal grounds.  First, he contends that there was insufficient evidence to support his conviction for the carjacking offense.  Specifically, he argues that the evidence did not sufficiently prove that he "took" the victim's vehicle, *i.e.*, that he "acquired possession or control of the vehicle for a period of time" as required by element one of the offense, and that the government failed to prove that he intended to "steal" the car which, he says, the government is required to prove under the instructions to the jury.  Second, he contends that the sentence of life imprisonment violates provisions of the United States Constitution discussed below.

## II. DISCUSSION

### A. Sufficiency Of The Evidence

---

[3] Gurule also objected to the presentence report on the ground that he did not receive a two-level reduction for acceptance of responsibility.  Although the court denied the two-level reduction for acceptance, the issue became moot because Gurule was subject to a life sentence under section 3559(c).

This court reviews challenges to the sufficiency of the evidence *de novo*. *United States v. Malone*, 222 F.3d 1286, 1290 (10th Cir. 2000). In making this determination, this court views "the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government." *United States v. Brown*, 200 F.3d 700, 704 (10th Cir. 2000) (quotations and citation omitted). This court "will reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*.

Gurule makes two separate arguments to challenge the sufficiency of the evidence. In his first argument, he asserts that the evidence did not sufficiently prove that he "took" the victim's vehicle. In his second argument, he alleges that the government failed to prove that he intended to "steal" the car.

### 1. *Whether Gurule "took" the victim's vehicle*

Gurule was charged in this case with violating 18 U.S.C. § 2119, which states in pertinent part:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation . . . shall [be guilty of a crime].

Thus in order to convict Gurule of carjacking, the government was required to prove beyond a reasonable doubt the following elements: (1) that Gurule took a motor vehicle from the person or presence of another; (2) that he did so by force, violence or intimidation; (3) that Gurule intended to cause death or serious bodily harm; and (4) that

the motor vehicle had been transported, shipped, or received in interstate or foreign commerce. (ROA, Vol. I, Doc. 30, Instruction No. 14.)

The trial court defined element one in Instruction No. 15: "To take a motor vehicle means to acquire possession or control of the vehicle for a period of time . . . . [T]he government does not have to prove that the victim was forced to leave the vehicle as long as it proves that the defendant had control of the situation." (*Id*., Instruction No. 15.) Gurule concedes elements two and four, but he contends that the evidence did not show that he acquired "possession or control of the vehicle for a period of time" as required by element one of the offense as defined in Instruction 15. He claims that although he admittedly used force and intimidation as required by element two, he did so just to get a "ride" rather than for the purpose of "taking" the car. (Appellant's Opening Brief at 14).

However, Gurule's subjective motivation in acquiring possession or control of the victim's vehicle is irrelevant to whether the government established the "taking" element of 18 U.S.C. § 2119. The *actus reas* of carjacking is the taking of a motor vehicle from the person or presence of another (element one) by force, violence or intimidation (element two). Thus, to establish element one, the government need only show that the defendant engaged in the prohibited conduct, *i.e*, acquiring possession or control of the victim's vehicle in the presence of another by force or intimidation. Accordingly, while the taker's purpose and motives in taking the vehicle have relevance on the issue of

-8-

whether he had the requisite criminal intent for carjacking (element three) (intention to cause death or serious bodily harm), his purpose or state of mind have no bearing on whether he engaged in the prohibited conduct.

It is undisputed that Gurule unlawfully entered the Grussendorf home and forced Ms. Grussendorf at knife point and with repeated threats to her life to take him to a particular location. Ms. Grussendorf did not volunteer to give a "ride" to Gurule in her vehicle, and Gurule certainly was in control of the situation. Thus, the record establishes that Gurule acquired possession or control of the victim's vehicle in the presence of another. Given that Gurule concedes that he used force and intimidation, the evidence was sufficient to satisfy the "taking" requirement of the statute.

## 2. *Did the government have to prove that Gurule intended to "steal" the car?*

Citing this court's opinion in *United States v. Romero*, 136 F.3d 1268, 1273 (10th Cir. 1998), Gurule contends that under the law of the case doctrine, the government was required to prove that he intended to steal the car because the jury was so instructed. Instruction No. 17 stated *inter alia*: "The intent requirement is satisfied when the Government proves that at the moment that defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." Gurule argues that this wording made intent to steal an element of the offense under our precedents. As Gurule maintains, "we adhere to the law of the case doctrine, whereby the Government is required to prove all elements put forth

in unchallenged instructions to the jury, even if the Government would not, under law, be otherwise required to do so." *Romero*, 136 F.3d at 1273. Mr. Gurule argues that under this principle the trial court's inclusion of the word "steal" in Instruction No. 17, with no objection by the government, obligated the government to prove that he intended to "steal" the car, and he further contends that the government failed to meet this burden. We disagree.

In *Romero* the defendant was charged with aggravated assault on an Indian reservation. In instructing the jury on the elements of the offense the court, with the prosecution's agreement, listed as an element that the victim was not an Indian. Without addressing whether under 18 U.S.C. § 1152 the non-Indian status of the victim of an Indian defendant is an element of the crime or an exception to the statute, this court reversed Romero's conviction. This was because the unopposed jury instructions making the non-Indian status of the victims an element of the Government's case formed the law of the case, and because there was no evidence presented on the Indian or non-Indian status of the alleged victims. *Id*. at 1270-71, 1273.

In the present case, the elements of the charged crime were contained in Jury Instruction No. 14.[4] The court's Jury Instruction No. 17 merely defined the third element

---

[4] Instruction No. 14 provides as follows:

> The government must prove each of the following elements beyond a reasonable doubt before you may find the defendant guilty of Count I:
>
> First: That the defendant took a motor vehicle from the person or

the government was required to prove – that Gurule intended to cause death or serious

bodily harm:

> The third element the government must prove beyond a reasonable doubt in order to convict the defendant of Count I is that the defendant intended to cause death or serious bodily harm. You do not, however, have to find that the defendant <u>actually</u> caused any physical harm.
>
> In some cases, intent is conditional. That is, the defendant may intend to engage in certain conduct only if a certain event occurs. For instance, if a defendant was prepared to shoot the victim of a crime if the resistance of the victim made that necessary, then conditional intent may be found. In this case, the government contends that the defendant intended to cause death or serious bodily harm if the alleged victim refused to turn over their vehicle. If you find beyond a reasonable doubt that the defendant had such an intent, the government has satisfied this element of the offense. The intent of the defendant may be determined from all of the statements made, from all of the acts done, and from all of the facts and circumstances surrounding the case.
>
> A conditional intent to kill or cause serious bodily injury is sufficient to establish the intent requirement under the statute. The intent requirement is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car.

(ROA, Vol. I, Doc. 30, Instruction No.17 (emphasis in original)).

Thus, the instruction informed the jury that the requisite intent in the third element

---

> presence of another;
> <u>Second</u>: That the defendant did so by force, violence or intimidation;
> <u>Third</u>: That the defendant intended to cause death or serious bodily harm; and
> <u>Fourth</u>: that the motor vehicle had been transported, shipped, or received in interstate or foreign commerce.

(ROA, Vol. I, Doc. 30, Instruction No.14.)

of the offense may be satisfied by a conditional intent. Nothing in the instruction suggests that the court was introducing a new element to be proven to the jury. Indeed, prior to the last sentence of paragraph 3 in Jury Instruction No. 17, which Gurule claims to require proof of the intent to steal, the court instructed the jury in paragraph 2 of the same instruction as follows:

> In this case, the government contends that the defendant intended to cause death or serious bodily harm *if the alleged victim refused to turn over their vehicle. If you find beyond a reasonable doubt that the defendant had such an intent, the government has satisfied this element of the offense.*

(*Id.* (emphasis added)). Read in context, the last sentence of the third paragraph of Jury Instruction No. 17 says no more than the court had already said in the second paragraph of the instruction, *i.e.*, the government has satisfied the intent requirement if the jury finds that the defendant intended to cause death or serious bodily harm *if the alleged victim refused to turn over their vehicle.* Accordingly, unlike the instruction in *Romero*, Jury Instruction No. 17 in this case did not expand the proof required to be shown by the government.

Gurule does not contend that he did not have the intent to cause death or serious bodily harm if the alleged victim refused to turn over the vehicle, and the evidence overwhelmingly demonstrated that he had the necessary intent. Gurule entered the Grussendorf residence without permission, grabbed Ms. Grussendorf by the arm and led her first to her bedroom to get her car keys. He next forced her into her parents' bedroom where he stole jewelry. He then took Ms. Grussendorf to the kitchen where Gurule

obtained a knife which he held to her back until she led him to her car. Gurule forced the victim into her car, and while pointing the knife at her abdomen and threatening that he also had a gun, Gurule gave instructions on where he wanted her to take him.

Throughout this prolonged ordeal for Ms. Grussendorf, Gurule's behavior was threatening, erratic and unpredictable. Gurule told Ms. Grussendorf not to do anything stupid and that "he hoped [she] would be alive to tell [her] grandchildren about this" and it was a "good thing that [her] mom wasn't home" because "if there were two hysterical women he would have had to kill us both." (ROA, Vol. II at 58.) We are convinced that this evidence sufficiently demonstrated the proof required of the government under the third element of the charged crime in the instructions given to the jury.

### B. Constitutional Challenges to the Statutory Punishment

Gurule contends that his sentence should be set aside because the mandatory life sentence violated the separation of powers doctrine, the due process clause, and the cruel and unusual punishments ban of the Constitution. Our review of constitutional challenges to a sentence is *de novo*. *See, e.g., United States v. Jones*, 213 F.3d 1253, 1261 (10th Cir. 2000). We are not persuaded that any constitutional violation is shown.

### 1. Separation of powers

Mr. Gurule asserts that the mandatory life sentence meted out under the Three Strikes law violates the constitutional principle of separation of powers by effectively concentrating in the executive branch, represented by the prosecutor, the power to bring

charges and to determine the punishment. Although we apparently have not addressed this issue in the specific context of the Three Strikes law, we have generally recognized that mandatory sentences do not violate the separation of powers principle. Thus, in considering a challenge to the Sentencing Guidelines some years ago we recognized that "because Congress has the power to completely divest the courts of their sentencing discretion and to establish exact, mandatory sentences for all offenses, Congress may circumscribe the court's sentencing discretion through the guidelines." *United States v. Thomas*, 884 F.2d 540, 543 (10th Cir. 1989).

More recently, we addressed a contention that the decision to prosecute a series of robberies under federal law rather than under state law constituted a violation of separation of powers in that, allegedly, the federal prosecutor's "unfettered discretion" to bring the charges "determine[d] with fixed consequences" the term of imprisonment that would result because of the mandatory consecutive sentences involved under 18 U.S.C. § 924. In rejecting this argument, we said that it erroneously equated the filing of federal charges with the conviction of the defendant and pointed out that all three branches were involved in the ultimate disposition of the case. *United States v. Curtis*, 344 F.3d 1057, 1064-65 (10th Cir. 2003).

As for the Three Strikes statute in particular, the few reported decisions of which we are aware from other circuits are unanimous in rejecting this argument. *See United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir. 1999) (*en banc*); *United States v. Rasco*,

123 F.3d 222, 226-27 (5th Cir. 1997); *United States v. Washington*, 109 F.3d 335, 338 (7th Cir. 1997).  We agree with these precedents.  As these cases all point out, the Supreme Court has held that Congress has the power not only to define criminal offenses but to determine punishments, and in the exercise of that power Congress may choose to give the judicial branch no sentencing discretion whatsoever.  *Chapman v. United States*, 500 U.S. 453, 467 (1991).  "[T]he scope of judicial discretion with respect to a sentence is subject to congressional control."  *Mistretta v. United States*, 488 U.S. 361, 364 (1989).  And it has been noted that "at the time the Constitution and the Bill of Rights were adopted, mandatory sentences were the norm in federal cases."  *Washington*, 109 F.3d at 338.[5]

In the face of these precedents and their reasoning, Gurule's arguments are untenable.

### 2.  The Cruel and Unusual Punishments Clause

Defendant maintains that the mandatory life sentence imposed on him violates the Eight Amendment's Cruel and Unusual Punishments Clause because, he contends, it is grossly disproportionate to his offense.  We cannot agree.

As we noted in *United States v. Jones*, 213 F.3d 1253, 1261-62 (10th Cir. 2000), the Supreme Court in *Solem v. Helm*, 463 U.S. 277, 292 (1983), established a three-

---

[5]Similarly, other mandatory sentencing provisions have been held not to violate the separation of powers doctrine.  *See, e.g., United States v. Hammer*, 3 F.3d 266,  269 (8th Cir. 1993).  We need not survey the reports for other examples because the general principle is well established and we are aware of no contrary holding.

pronged analysis for reviewing Eighth Amendment proportionality challenges, but subsequently in *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court substantially narrowed that approach and instructed that courts should not go beyond the first prong in most cases. Thus, we examine the sentence at issue in relation to the crime only for "gross disproportionality." *Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th Cir. 1999). This analysis takes into account the Court's statement in *Solem*, 463 U.S. at 284, that the "final clause [of the Eighth Amendment] prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." Only if we find such gross disparity will we proceed further with the analysis. *Hawkins*, 200 F.3d at 1282. It is only in the "rare case" that a "threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" *Id*. (quoting *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring)).[6] *See also United States v. Angelos*, 433 F.3d 738, 750-51 (10th Cir. 2006).

This court does not appear to have issued an unqualified holding that mandatory life terms under the Three Strikes law do not violate this constitutional protection. But we have held that a life sentence plus a consecutive term of 45 years under this statute was not disproportionate for a defendant who had been convicted of multiple offenses involving robbery, extortion and the use of firearms and who had two previous convictions for robbery. *United States v. Jones*, 213 F.3d 1253, 1261-62 (10th Cir. 2000).

---

[6]We held in *Hawkins* that Justice Kennedy's concurring opinion is controlling in our application of *Harmelin*. 200 F.3d at 1282.

We cannot conclude that this is a rare case in which the initial comparison of the offense and the sentence leads to an inference that the punishment is grossly disproportionate to the crime. In light of the holding in *Harmelin* that a sentence of imprisonment for life without possibility of parole is not grossly disproportionate when meted out to a first offender for possession of 650 grams of cocaine, it may be wondered if a life sentence would ever be grossly disproportionate for a serious violent felony like the one for which Mr. Gurule was convicted. We need not speculate on that, however, for we are certain that we cannot conclude that the sentence is grossly disproportionate when the defendant had twice before been convicted of a serious violent felony. Even in *Solem*, which as we have noted has been narrowed considerably, the Court made it clear that although the proportionality issue is to be focused on the crime for which the challenged sentence has been imposed, courts must also be mindful that "legislatures may punish recidivists more severely than first-time offenders." *United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir. 1999) (*en banc*).

We must reject Mr. Gurule's Eighth Amendment argument.

### 3. *Due process*

Finally, Mr. Gurule contends that the imposition of a mandatory life sentence violated his due process rights. As presented in his opening brief, this argument adds little to the foregoing two arguments based on separation of powers and on the Eighth Amendment. In *Curtis*, 344 F.3d at 1064, we held that due process was not violated by

the decision to prosecute a series of robberies in federal court, rather than in state court. We noted there that the decision may validly be based on "whether harsher penalties are available" in the chosen forum. *Id.* at 1064. Similarly, we find no due process violation in the prosecutor's exercise of the discretion granted by Congress to bring charges under a statute with mandatory sentencing provisions. Mr. Gurule does note additionally that a mandatory sentence largely negates the defendant's right to be present at sentencing and his right of allocution by removing any possibility that the sentence may be affected by his presence and allocution. However, we do not find that these considerations rise to the level of a violation of due process. As Justice Scalia's opinion in *Harmelin* noted, mandatory penalties were common at the time of the formation of the Republic and of the adoption of the Constitution and the Bill of Rights and have remained so. 501 U.S. at 994-95. Because we are convinced that the Three Strikes law does not violate either the separation of powers principle or the prohibition of cruel and unusual punishments, limitations which are more specifically relevant to the statute's validity, we do not find a violation of due process.

Mr. Gurule expands his argument on his due process claim in his reply brief, but generally we do not consider arguments raised for the first time in reply briefs. However, in any event the arguments there presented are insufficient to show that the punishment here is unconstitutional.

The superficially appealing due process argument is that the Three Strikes law

violates the Constitution because it shifts the burden of proof to the defendant to show, by clear and convincing evidence, that a prior "strike" should not be counted. This would require the defendant to show that no weapon or threat of a weapon was involved in the prior conviction and no one was injured (to paraphrase the statute liberally). The reply brief cites only one authority to support Gurule's argument, *United States v. Gatewood*, 184 F.3d 550, 554-55 (6th Cir. 1999). However that case was overturned by an *en banc* opinion of the Sixth Circuit, *United States v. Gatewood*, 230 F.3d 186 (6th Cir. 2000) (en banc). The court there observed that because Congress could have chosen not to provide any affirmative defense, it surely could not be unconstitutional for Congress to provide the defense, but put the burden to establish it on the defendant. *Id.* at 191. Several other courts have rejected constitutional challenges like this, and the overruled panel opinion in *Gatewood* apparently stands alone.

Significantly, our court has held that there is no due process violation in allocating the burden to the defendant in the sentencing phase. *United States v. Smith*, 208 F.3d 1187, 1189-90 (10th Cir. 2000). It is also significant that in *Smith* the panel declined to rule on the related argument that the quantum of proof required of the defendant (clear and convincing evidence) violated due process, holding that on the facts before it the defendant in that case could not prevail under any standard. Here, by raising the argument only in the reply brief, defendant has precluded the government from making a

similar argument on the facts of this case. The argument might have merit here as well.[7]

Other cases upholding the Three Strikes law against a due process challenge based on the allocation and quantum of proof of the affirmative defense include *United States v. Bradshaw,* 281 F.3d 278, 294-97 (1st Cir. 2002) (citing cases from other circuits and holding that neither allocating the burden to defendant nor employing the clear and convincing standard violate due process); and *United States v, Davis*, 260 F.3d 965, 969-70 (8th Cir. 2001).

In sum, we find no merit in the due process claim. For this reason, and those expressed earlier, the conviction and sentence are

AFFIRMED.

_____

[7]As the government notes in its brief, our court has considered and rejected an argument that the Three Strikes law violates due process because there is no age limit on the prior convictions which the government may use to establish the defendant's two prior "strikes." *United States v. Bredy,* 209 F.3d 1193, 1198 (10th Cir. 2000).