**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BARRY P. FILLMAN,

Defendant - Appellant.

No. 07-3226
(D.C. No. 06-CR-10218-JTM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

---

Defendant Barry Fillman appeals his sentence and conviction on five counts involving firearm possession. He asserts that there was not sufficient evidence to sustain a guilty verdict on Count 2 because there was no evidence regarding the location of the firearm. He also claims that the district court improperly calculated his sentence of 292 months' imprisonment. Exercising our jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we conclude that sufficient

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

evidence was presented to sustain the guilty verdict and that the district court committed no procedural error in calculating Mr. Fillman's Guidelines sentence. Accordingly, we **AFFIRM**.

## I. BACKGROUND

Carrying a gun, Mr. Fillman let himself into the apartment of Tammy Gannon and her 11-year-old son. He placed the gun under a couch in the living room and went to Ms. Gannon's bedroom to lie down. At that time Ms. Gannon, who was not comfortable with Mr. Fillman being in her apartment, went to her living room, discovered Mr. Fillman's gun, and hid the gun. When her son came home from school a short time later, she asked him to borrow a neighbor's phone so that she could call a friend to ask the friend to take both her and her son to her mother's home.

Ms. Gannon woke Mr. Fillman when her friend arrived and told him that he had to leave her apartment. Mr. Fillman became upset, but he started to gather his things to leave. He told Ms. Gannon that he needed to find something that was under the couch, and when he could not find his gun, he became even more upset. He asked Ms. Gannon where "it" was, and she denied knowing what he was talking about.

Mr. Fillman then left Ms. Gannon's apartment, but he quickly returned with a .22 caliber rifle that he had retrieved from his truck. Upon reentering the apartment, he pulled the blinds, positioned a chair in front of the doorway, sat in

the chair, and demanded that Ms. Gannon return his gun. While Ms. Gannon tried to prevent her son from coming out of his room, Mr. Fillman fired two shots from his rifle in the direction of Ms. Gannon's head; both shots missed her. When Ms. Gannon still denied knowing anything about the gun, Mr. Fillman fired again, this time hitting Ms. Gannon in the buttocks.

After Mr. Fillman fired the third shot, Ms. Gannon's son came out of his room. Mr. Fillman then brandished a knife, pointing it at Ms. Gannon's son. Frightened, her son retreated to his bedroom. Mr. Fillman eventually left the apartment, and the police were called to Ms. Gannon's apartment.

Several days later, police officers, who were aware that Mr. Fillman was wanted for Ms. Gannon's shooting, received information about Mr. Fillman's location. When the police arrived at that location, one officer saw a man matching Mr. Fillman's description in a vehicle. When the officers attempted to stop the vehicle, Mr. Fillman exited, brandishing an object that the officers believed to be a weapon but later determined was a long butane lighter. The officers told Mr. Fillman to drop the item. At that point, Mr. Fillman dropped the lighter and fled.

The officers gave chase and located Mr. Fillman under a vehicle in an alley. Mr. Fillman was ordered to come out from under the vehicle. Mr. Fillman got up, holding a large knife and pointing the blade at an officer. The officer instructed Mr. Fillman to drop the knife, and Mr. Fillman complied. Instead of

following orders to get down on the ground, however, Mr. Fillman attempted to run. One officer was able to apply a taser to Mr. Fillman as he ran, but Mr. Fillman continued his attempt to escape.

The officers were eventually able to get Mr. Fillman to the ground and under control so they could take him into custody. When the officers brought Mr. Fillman to his feet, they discovered a flask underneath him that contained explosive powder and a fuse. In searching Mr. Fillman, the officers found a bag of .22 caliber ammunition in his pockets and a tin can that was shaped like a hockey puck and wrapped in blue tape with a fuse protruding from it.

The officers later searched Mr. Fillman's pickup truck, which was parked in the vicinity where he was first seen in the other vehicle. Inside Mr. Fillman's truck, the officers found a blue bag containing another flask similar to the one they had found underneath Mr. Fillman. In their search of Mr. Fillman's truck, the officers also located the .22 rifle that was used to shoot Ms. Gannon.

Mr. Fillman was charged with five counts stemming from the incident at Ms. Gannon's and his arrest. Specifically, he was charged with possessing the unregistered destructive devices found on his person and in his vehicle, being a felon in possession of the firearm and ammunition found on his person and in his truck, and being a felon in possession of the ammunition that was used in Ms. Gannon's apartment. After a trial, a jury found Mr. Fillman guilty on all counts.

At sentencing, the district court determined that the advisory Guidelines range was 292 to 365 months, based on Mr. Fillman's total offense level of 38 and criminal history category of III. Mr. Fillman was sentenced to 292 months of imprisonment. He received a sentence of 120 months on each of Counts 1 and 2 and 52 months on each of Counts 3, 4, and 5. Counts 1, 2, and 3 were ordered to run consecutively, and Counts 4 and 5 were ordered to run concurrent to Count 3. Mr. Fillman timely appealed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Mr. Fillman argues that the evidence was insufficient as to Count 2. Specifically, he asserts that there was no evidence "concerning a device in a truck." Aplt. Br. at 17. His argument rests on the superseding indictment, which, in Count 2, charged him with possessing "a destructive device (the destructive device found in the truck)." R., Vol. I, Doc. 31, at 1-2 (Superseding Indictment, filed Jan. 24, 2007).[1]

---

[1]    Mr. Fillman also implies that the evidence was insufficient on Count 1, which charged him with possessing a firearm not registered to him and described the firearm as "a destructive device (the destructive device found underneath Fillman upon his arrest)." R., Vol. I, Doc. 31, at 1. He alleges that the government did not place the destructive devices at the correct scenes, the government did not prove they were destructive devices that were not properly registered, and that "[t]he most glaring failure" of the government's ability to prove its case was in Count 2. Aplt. Br. at 17. However, Mr. Fillman only makes substantive arguments that pertain to Count 2. "[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an

(continued...)

A sufficiency of the evidence claim is reviewed de novo. *United States v. Willis*, 476 F.3d 1121, 1124 (10th Cir. 2007). The evidence is sufficient if, when viewed in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* "We will not weigh conflicting evidence" in reviewing the evidence's sufficiency. *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007) (quoting *United States v. Summers*, 414 F.3d 1287, 1293 (10th Cir. 2005)). It is only when "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" that we will reverse a conviction. *Willis*, 476 F.3d at 1124 (internal quotation mark omitted) (quoting *United States v. Gurule*, 461 F.3d 1238, 1243 (10th Cir.2006)). We do not require that the government prove

---

[1](...continued)
appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). Because Mr. Fillman's possible sufficiency-of-the-evidence challenge concerning Count 1 was not sufficiently briefed, any assertion of error in that regard is waived. *See id.* at 1105 ("But these cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine."); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1169 (10th Cir. 2002) (finding issue waived for failure to properly brief when argument consisted entirely of conclusory statements), *modified on reh'g*, 319 F.3d 1207 (10th Cir. 2003).

Even if we were to consider the sufficiency of the evidence with regard to Count 1—the only other count pertaining to destructive devices—Mr. Fillman could not succeed. First, as discussed *infra*, Mr. Fillman does not challenge the government's proof as to an essential element of the offense. Second, even if we were to believe that the government needed to prove the location of these destructive devices, the record demonstrates that there was sufficient evidence on Count 1: the government put forward evidence about these destructive devices, their location, and that they were not registered.

everything in the indictment. *United States v. Smith*, 838 F.2d 436, 439 (10th Cir. 1988). Rather, in our review, we look to the substantive elements of the offense. *See Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979).

Mr. Fillman was convicted under 26 U.S.C. § 5861(d), which provides that it is illegal for a person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." "From the text of the statute, the only element is possession of an unregistered firearm. However, the Supreme Court has read a mens rea requirement into the crime . . . ." *United States v. Dwyer*, 245 F.3d 1168, 1171 (10th Cir. 2001). Mr. Fillman does not claim that the government failed to demonstrate that he possessed the destructive device. Rather, he claims that the government did not demonstrate that there was a destructive device in a truck. Accordingly, Mr. Fillman's argument about the location of the device is misguided and fails because he presents no evidence that a rational trier of fact could not have found an *essential element* beyond a reasonable doubt. *See Willis*, 476 F.3d at 1124.

Furthermore, even if we were to believe that the location of the destructive devices had to be demonstrated, testimony was presented that these devices came from a blue bag that was located in Mr. Fillman's pickup truck. The government presented testimony about the mortars and the flasks containing explosive powder that were found in the blue bag in the truck and testimony that these items were destructive devices. There also was evidence that the National Firearms

-7-

Registration was searched multiple times for Mr. Fillman under his real name and aliases and that the agents did not find any firearms registered to Mr. Fillman or any person with the name "Fillman." Accordingly, this evidence, when taken in the light most favorable to the government, would be sufficient to prove not only that there were unregistered destructive devices but also their location.[2]

### B. Sentencing

We review a sentence for reasonableness, giving deference to the district court under "the familiar abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 594 (2007); *see also United States v. Smart*, 518 F.3d 800, 805 (10th Cir. 2008). Reasonableness "has both procedural and substantive components." *United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007), *overruled in part on other grounds by Irizarry v. United States,* 128 S. Ct. 2198,

---

[2] The government suggests that Mr. Fillman's argument could more appropriately be considered one relating to "an amendment to the charging document and a variance to the charging terms." Aplee. Br. at 23. Even if we were to consider this argument under such a framework—a framework that Mr. Fillman never invoked—this would not change our conclusion. There are two kinds of variances: a constructive amendment and a simple variance. *Sells*, 477 F.3d at 1237. A constructive amendment "occurs when the district court's instructions and the proof offered at trial broaden the indictment." *Id.* Here, the proof offered at trial did not broaden the indictment; as discussed *supra*, the government offered proof regarding the location of the devices. "A simple variance arises when the evidence adduced at trial establishes facts different from those alleged in the indictment, . . . . The defendant bears the burden of proof both to show that a variance occurred and that it was fatal." *Id.* Here, not only did Mr. Fillman fail to meet this burden, in that he did not argue that there was a variance at all, but, as discussed *supra*, the evidence at trial demonstrated the location of the destructive devices, as stated in the superseding indictment. Thus, there was no constructive amendment or simple variance.

2201 n.1, 2203-04 (2008); *see Gall*, 128 S. Ct. at 597. Because the starting point for any sentence is a properly calculated Guidelines range, we must first ensure that the district court made no procedural errors. *United States v. Todd*, 515 F.3d 1128, 1134-35 (10th Cir. 2008). In so doing, we review the district court's legal conclusions de novo and factual findings for clear error. *Id.* at 1135.[3]

Mr. Fillman alleges the district court erred in the following six ways: (1) grouping the counts of conviction; (2) making an upward departure without notice; (3) imposing consecutive sentences above the statutory maximum; (4) applying certain enhancements; (5) finding facts when determining to apply the enhancements in violation of *United States v. Booker*, 543 U.S. 220 (2005); and

---

[3] The government contends that Mr. Fillman failed to raise a number of issues before the district court and, thus, plain error review should apply. Under plain error review, a defendant "must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (internal quotation marks omitted) (quoting *United States v. Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003)). There is no dispute that Mr. Fillman objected to the enhancements that were applied to his sentencing, the calculation of his offense level, and the consecutive sentences he received. As to the remaining claims, we need not delay in distinguishing between those claims Mr. Fillman properly preserved and those he forfeited. Regardless of what standard of review we apply, the result remains the same, for we find no error as to any of the issues Mr. Fillman raises on appeal. *See United States v. Martinez-Barragan*, 545 F.3d 894, 899 (10th Cir. 2008) ("Since we ultimately conclude that the district court did not commit any error at all, the difference between plain error and harmless error is largely immaterial.").

(6) failing to give him a meaningful opportunity to be heard.[4]  He also claims that the judge relied on undisclosed evidence that was reviewed during a recess in the sentencing hearing.  We find no merit in any of these arguments.

First, with regard to the district court's use of grouping, we find no procedural error.  When counts involve substantially the same harm, the counts are grouped and the defendant's offense level is the offense level for the most serious of the counts.  U.S. Sentencing Guidelines Manual §§ 3D1.2, 3D1.3(a).  That is precisely how Mr. Fillman's counts were grouped.  All of Mr. Fillman's counts of conviction were grouped together because they involved substantially the same harm.  His base offense level was set at 22 based on his conviction on a count of unlawful possession of a firearm after being convicted of a felony crime

---

[4]    Mr. Fillman mistakenly describes as substantively unreasonable the district court's application of consecutive sentences and sentencing enhancements.  Both of these alleged errors pertain to the proper calculation of a Guidelines sentence and are thus procedural errors.  *See Todd*, 515 F.3d at 1134-35 ("[O]ur first task remains to 'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . [or] selecting a sentence based on clearly erroneous facts.'" (alteration in original) (citing *Gall*, 128 S. Ct. at 597 )).  Substantive reasonableness, on the other hand, "addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) (internal quotation marks omitted) (quoting *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir.), *cert. denied*, 128 S. Ct. 161 (2008)).  After careful review of Mr. Fillman's brief, we can find no proper claim regarding substantive reasonableness.  Thus, we address all of his contentions as claims of procedural error.

of violence, which was the most serious of his counts of conviction. The counts were properly grouped pursuant to the Guidelines.

Next, Mr. Fillman's claim that the district court made an upward departure without notice fails because there was no upward departure. "[W]hen a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines, the resulting increase or decrease is referred to as a 'departure.'" *Atencio*, 476 F.3d at 1101 n.1. Here, the district court did not depart from the recommended Guidelines range by applying Chapters Four or Five of the Guidelines. Rather, the district court applied a sixteen-level increase to Mr. Fillman's base offense level due to offense characteristics and the application of three different enhancements. And it then set his sentence at the low end of the applicable Guidelines range.[5]

Third, the district court did not improperly sentence Mr. Fillman above the statutory maximum, as Mr. Fillman alleges. After the sixteen-level increase was

_____

[5]    There has been confusion in our "sentencing nomenclature" with regard to variances and departures. *Atencio*, 476 F.3d at 1101 n.1. Even if we were to assume that Mr. Fillman fell victim to this confusion, he could not prevail because there also was no variance. We clarified that "[w]hen a court enhances or detracts from the recommended range through application of § 3553(a) factors, [] the increase or decrease is called a 'variance.'" *Id.* Here, the district court sentenced Mr. Fillman at the low end of the applicable Guidelines range. The district court stated that it considered the § 3553(a) factors, but it did not sentence Mr. Fillman above or below the applicable Guidelines range based on its consideration of those factors. Thus, whether we consider Mr. Fillman's argument to pertain to a departure or a variance, we could not find any support for his claim because neither a departure nor a variance occurred when Mr. Fillman was sentenced.

-11-

applied to Mr. Fillman's base offense level, his total offense level was 38. This

yields an applicable Guidelines range of 292 to 365 months. The district court's

sentence of 292 months—the low end of that range—was proper. The Guidelines

instruct: "If the sentence imposed on the count carrying the highest statutory

maximum is less than the total punishment, then the sentence imposed on one or

more of the other counts shall run consecutively, but only to the extent necessary

to produce a combined sentence equal to the total punishment." U.S.S.G. §

5G1.2(d).[6] Here, the highest statutory maximum is 10 years, which applies to

each of Counts 1 and 2. 26 U.S.C. § 5871. Likewise, there is a statutory

maximum of 10 years for the remaining counts. 18 U.S.C. § 924(a)(2). Thus, the

district court properly reached a total punishment of 292 months—the low end of

_____

[6]     The Guidelines commentary to this section further explains:

> The combined length of the sentences ("total punishment") is
> determined by the court after determining the adjusted
> combined offense level and the Criminal History Category.
> . . .
>       Usually, at least one of the counts will have a statutory
> maximum adequate to permit imposition of the total
> punishment as the sentence on that count. The sentence on
> each of the other counts will then be set at the lesser of the
> total punishment and the applicable statutory maximum, and be
> made to run concurrently with all or part of the longest
> sentence. If no count carries an adequate statutory maximum,
> consecutive sentences are to be imposed to the extent
> necessary to achieve the total punishment.

U.S.S.G. § 5G1.2 cmt. n.1. Mr. Fillman's situation falls into the latter category:
no one count carries a statutory maximum equal to the total punishment under the
Guidelines.

the Guidelines range—when it sentenced Mr. Fillman to the statutory maximum on each of Counts 1 and 2, running consecutively, and then less than the statutory maximum on the remaining three counts, with Count 3 running consecutively to Counts 1 and 2 and running concurrently to Counts 4 and 5. *See United States v. Ivory*, 532 F.3d 1095, 1107-08 (10th Cir. 2008) ("[I]f the defendant has been convicted of several offenses, it is hardly unreasonable to stack the statutory sentences to reach a presumptively reasonable Guidelines sentence." (citing U.S.S.G. § 5G1.2(d)).[7]

Mr. Fillman next challenges both the sentencing enhancements that were applied and how the district court determined that these enhancements applied. Mr. Fillman asserts that the district court violated *Booker* when it found facts for the enhancements. However, "*Booker* makes clear that judicial fact-finding by a preponderance of the evidence standard is unconstitutional only when it operates

---

[7]     There is little doubt that the district court properly utilized consecutive sentences. A number of circuits have come to similar conclusions in interpreting § 5G1.2. *See United States v. Thompson*, 523 F.3d 806, 814 (7th Cir.) ("[T]he advisory Guidelines range was life imprisonment. The district court thought a life sentence was warranted, and it did not err when it imposed consecutive maximum sentences on each count of conviction to reach an equivalent sentence."), *cert. denied*, 129 S. Ct. 770 (2008); *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) ("We have held that § 5G1.2(d) requires that sentences run consecutively to the extent necessary to reach the defendant's guidelines range."); *United States v. Rogers*, 423 F.3d 823, 828 (8th Cir. 2005) ("A sentence equal to the 'total punishment' is then imposed on each count (or the statutory maximum sentence, if less), and the individual sentences are imposed to run concurrently, unless the count carrying the highest statutory maximum is less than the total punishment, in which case consecutive sentencing is employed to produce a combined sentence equal to the total punishment.").

to increase a defendant's sentence *mandatorily*." *United States v. Hall*, 473 F.3d 1295, 1312 (10th Cir. 2007) (emphasis added). Here, the district court referred to the "advisory guideline range" and also indicated that it had considered the factors of section 3553(a) and felt that the sentence was otherwise appropriate. R., Vol. IV, Tr. at 315-16 (Sentencing Hearing, dated July 23, 2007). Accordingly, it is clear that the district court was applying the Guidelines in a discretionary manner, and there is no *Booker* violation. *See Hall*, 473 F.3d at 1312.

We turn next to Mr. Fillman's challenges to the application of three enhancements. Mr. Fillman first outlines his objection to a four-level enhancement for possession of a firearm in connection with another felony offense pursuant to section 2K2.1(b)(6) of the Guidelines. He claims that the application notes exclude the enhancement when the *conviction offense* is for the possession of a firearm. Mr. Fillman's argument misreads the application notes. The enhancement applies "[i]f the defendant used or possessed any firearm or ammunition in connection with *another* felony offense." U.S.S.G. § 2K2.1(b)(6) (emphasis added). The application notes indicate that "another felony offense" "means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* § 2K2.1 cmt. n.14(C). Accordingly, the enhancement is

-14-

excluded only when the *other felony offense*— that is serving as the basis of the enhancement—is the possession of a firearm, and not when the conviction offense is. Here, the "other felony offense" serving as the basis of the enhancement is aggravated assault, which is a felony under Kansas law. Kan. Stat. Ann. § 21-3410. Thus, the enhancement was appropriate.

Next, Mr. Fillman challenges a two-level victim-related enhancement, arguing that the term "victim" in the Guidelines was not intended to apply to Ms. Gannon or her son. The vulnerable-victim enhancement applies when the defendant knew or should have known that the victim was vulnerable. U.S.S.G. § 3A1.1(b)(1). A vulnerable victim is any person "(A) who is a victim of the offense of conviction *and any conduct for which the defendant is accountable under §1B1.3* (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." *Id.* § 3A1.1 cmt. n.2 (emphasis added). Mr. Fillman claims that the term "victim" does not apply to "indirect or secondary victims." Aplt. Br. at 14 (citing U.S.S.G. § 3D1.2 cmt. n.2). However, the commentary Mr. Fillman cites is from a Guidelines section pertaining to grouping, which provides no guidance on the vulnerable-victim enhancement.

When we look to the vulnerable-victim enhancement, the Guidelines instruct us to look to all relevant conduct and not just the offense of conviction. U.S.S.G. § 3A1.1 cmt. n.2; *see also United States v. Holbert*, 285 F.3d 1257,

1260-61 (10th Cir. 2002).  Under the Guidelines, relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant."  U.S.S.G. § 1B1.3(a)(1)(A).  Mr. Fillman's enhancement applied on the basis of his interaction with Ms. Gannon's eleven-year-old son, during which he acted in a threatening manner toward the boy after having shot his mother.  This certainly would be conduct relevant to Mr. Fillman's possession of the cartridge casings from the rounds he had just fired in Ms. Gannon's apartment.  Thus, the district court's consideration of Ms. Gannon's son as a "victim" is not error.[8]

Mr. Fillman's final enhancement objection pertains to a six-level enhancement for assaulting a law enforcement officer pursuant to section 3A1.2 of the Guidelines.  Mr. Fillman reiterates his claim that the term "victim" would not include the officer and also suggests that the conduct could not serve as the basis for an enhancement because it was not proven at trial.  As discussed *supra*,

---

[8]    We note that our consideration of the issue is limited to Mr. Fillman's argument that "'[t]he term 'victim' is not intended to include indirect or secondary victims.'"  Aplt. Br. at 14 (quoting U.S.S.G. § 3D1.2 cmt. n.2).  Any additional argument about this enhancement that could have been made by Mr. Fillman is forfeited in this appeal because he failed to make such an argument in his opening brief.  *See Bronson*, 500 F.3d at 1104; *see also* Fed. R. App. P. 28(a)(9)(A) (stating that an appellant's brief must contain "appellant's contentions and the reasons for them").  Thus, our resolution of this issue does not decide whether Ms. Gannon's son was shown to be a "*vulnerable*" victim.  Our decision is limited to resolving the issue Mr. Fillman presented on appeal: whether Ms. Gannon's son could be considered a "victim" for purposes of this enhancement.

a sentencing court can "enhance a defendant's sentence using uncharged conduct proven to the court by a preponderance of the evidence." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1131 (10th Cir. 2006). And Mr. Fillman's argument about who is a "victim" relies on the Guidelines grouping provisions, which are inapposite.

With regard to the enhancement for assaulting a law enforcement officer, the plain language of the Guidelines indicates that the enhancement applies "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom." U.S.S.G. § 3A1.2(c)(1). Here, Mr. Fillman brandished a large hunting knife at a police officer, who was in uniform, when he was attempting to flee. This fits squarely within the enhancement. Accordingly, there was no error in applying the enhancement. *See United States v. Coldren*, 359 F.3d 1253, 1255-56 (10th Cir. 2004) (affirming the application of the enhancement when the defendant pleaded guilty to being a felon in possession of a firearm).

Mr. Fillman's remaining two claims of error are that he had no meaningful opportunity to be heard and that the judge relied on undisclosed evidence in determining his sentence. Both arguments are foreclosed by the record. The record clearly demonstrates that the district court gave Mr. Fillman's attorney the

opportunity to make arguments before and at sentencing, and that the district court gave Mr. Fillman himself the opportunity to address the court. The district court specifically asked Mr. Fillman if he would like to be heard before the sentence was imposed. Mr. Fillman's only response was: "Wouldn't know where to start, Your Honor." R., Vol. IV, Tr. at 326.

As to the consideration of undisclosed evidence, the record indicates that the district court took a recess to consider the presentence report and the arguments presented both at the sentencing hearing and in writing. Mr. Fillman claims that the district court "referred to unknown and undisclosed evidence." Aplt. Br. at 12. Our careful review of the transcript of the sentencing hearing reveals no such reference. When the hearing reconvened, the district court stated: "I have reviewed the evidence that was submitted or presented this morning, have gone back over the presentence report and the information contained in there. I have reviewed the objections again, which we'll take up in a moment." R., Vol. IV, Tr. at 314. The district court then announced a tentative sentence before giving Mr. Fillman's attorney the opportunity to speak to the objections he had filed. Thus, Mr. Fillman's arguments that he had no opportunity to be heard and was sentenced on the basis of undisclosed evidence lack any support in the record.

### III.  CONCLUSION

There was sufficient evidence to convict Mr. Fillman, and the district court made no errors in calculating Mr. Fillman's sentence.  We **AFFIRM**.


Entered for the Court


Jerome A. Holmes
Circuit Judge